**SO ORDERED.**

**SIGNED September 29, 2017.**



_____
JOHN W. KOLWE
UNITED STATES BANKRUPTCY JUDGE
_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

IN RE: SHARON BOYD RILEY                    CASE NO. 17-80108

### REASONS FOR DECISION DISALLOWING REIMBURSEMENT OF ADVANCES THROUGH DEBTOR'S CHAPTER 13 PLAN

Before the Court on confirmation is Sharon Boyd Riley's ("Debtor") Chapter 13 plan which proposes to pay her attorney, Thomas C. McBride ("McBride"), as an administrative expense of her estate, the "no-look" attorney fee allowed by standing order in this District *plus* reimbursement of advances made by McBride to pay the filing fee and other prepetition costs on behalf of the Debtor. McBride advanced these costs as part of his "no-money-down" Chapter 13 practice, which began late 2009. For most of this time period, this District had in place a Standing Order Regarding "No-Look" Fees in Chapter 13 Cases, which provided that the attorney's fee payable under the order was inclusive of any prepetition expenses advanced by the debtor's attorney. As a result, in those cases in which attorneys requested the no-look fee, they were prohibited from requesting reimbursement of expenses, effectively requiring them to absorb those costs. Effective February 1, 2017, this District adopted a new Standing Order Regarding "No-Look" Fees in Chapter 13 Cases that is silent regarding whether the limit on the no-look fee includes any pre-petition expenses advanced. This case is the first of many filed by McBride (and

other debtors' counsel) after the effective date of the new order, in which he seeks reimbursement of the advances through the plan in addition to the compensation allowed under the new order. The Court is now called upon to determine whether McBride may seek reimbursement of the advances through the Debtor's Chapter 13 plan.

The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334. This matter is designated a core proceeding under 28 U.S.C. § 157(b)(2)(L). The Court makes the following findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.

## I. BACKGROUND

**A.    Description of McBride's practice and his agreement with the Debtor**

This case is a "no-money-down" bankruptcy case — a case in which the debtor's attorney agreed to advance the funds to pay the filing fee, the credit counseling course fee and a credit report fee on behalf the debtor, with the understanding by the debtor that the advances would be reimbursed through the confirmed plan, along with payment of the no-look attorney's fee. McBride has been filing no-money-down cases since at least 2009, and according to him, approximately 80% of his Chapter 13 cases are no-money-down cases.[1] McBride's no-money-down arrangement with the Debtor in this case is set forth in a February 2, 2017 agreement entitled "Chapter 13 Contract and Fee Agreement."[2] The first section of the agreement, entitled "Attorney's Fees," states that the Debtor agrees to pay an attorney fee in the amount of $2,150.00.[3] It also sets forth the costs that McBride will be paying on behalf of the Debtor, and which the Debtor affirmatively states she will repay. These include the filing fee of $310, a $24 charge for

---

[1] McBride obtained approval from the Louisiana Bar Association to advertise no-money-down Chapter 13 bankruptcy cases on September 21, 2009. Thus, the Court assumes the no-money-down practice began around this time. *See* Case No. 17-80108, McBr. Ex. A. Attached to this correspondence is the script from one of his advertisements, which states: "I'm Tom McBride, of the McBride Law Firm, with over 20 years of helping people right here in Central Louisiana – We've seen it all. That's why we created the no money down Chapter 13 Bankruptcy. You pay nothing in advance, and we will treat you with dignity and respect. …" *See* Case No. 17-80108, McBr. Ex. A.

[2] Doc. No. 16-4, Ex. C.

[3] This District's current standing order on no-look fees in Chapter 13 cases caps attorney's fees at 10 times the monthly plan payment if that payment is below $300. For all other cases, the no-look fee is $3,000, with another $600 being payable during the last six months of the plan provided certain enumerated requirements are met. In this case, the Debtor's plan payment is $215, setting the attorney's fee at $2,150.

2

credit counseling, and a $33 charge for a credit report, for a total of $367. This amount is then added to the attorney fee to provide a total of $2,517 to be paid by the Debtor for McBride's representation in the case. The agreement states that this total will be paid through the plan.

The proposed Plan provision on administrative expenses is the only one at issue in this case and mirrors the terms set forth in the engagement agreement by providing: "Thomas C. Bride, LLC shall receive attorney and administrative fees of $2,517 (this total includes attorney fees of $2,150 plus reimbursement of court costs of $310, credit counseling fee of $24, and credit report fee of $33)."[4] Administrative expenses are paid in preference to all other creditors being paid through the plan.

McBride submitted, without objection, the Debtor's affidavit, in which she states that she was three months behind in payments on her car note at the time she filed her case. She acknowledged that she signed a Contract and Fee Agreement with McBride and agreed "to pay attorney fees of $2,150.00 and costs of $367.00, totaling $2,517.00."[5] She further stated that she "would not have been able to pay the filing fees and costs of $367.00 to file the Chapter 13 Bankruptcy and prevent [her] vehicle from being repossessed."[6] The Debtor did not present any documentary evidence to support her assertion that her vehicle was in the process of being repossessed at the time of filing. During the confirmation hearing, McBride asserted that if he did not pay the filing fees and other costs for his clients, many clients would be denied access to the court. He views his willingness to advance the prepetition expenses as a valuable service to his clients, and he assumes the risk that the advances will not be repaid if either the debtor defaults on plan payments or the case is dismissed for any other reason. He also stated this practice benefits the clerk of court since he pays the filing fee in full with the petition.

---

[4] Doc. No. 3.

[5] Doc. No 16-3, Ex. B.

[6] *Id.*

3

17-80108 - #23   File 09/29/17   Enter 09/29/17 16:19:04   Main Document   Pg 3 of 18

## B. No-look fees in this District and their impact on no-money-down cases

Effective April 1, 2010, the Bankruptcy Judges in this District adopted a District-wide standing order on no-look fees.[7] It established "a presumptively reasonable" attorney fee that all Chapter 13 debtor's counsel could choose to accept in lieu of filing a formal fee application. It generally described the services expected of the attorneys in exchange for the fee. While it did not prohibit an attorney from advancing the filing fees and other pre-petition costs on behalf of a Chapter 13 client, it stated that "any advances made by debtor's counsel for filing fees or expenses pre-confirmation will be considered included in the no-look fee."[8] That order was amended on September 13, 2013; the provision concerning advances made by debtor's counsel remained in the amended order.[9]

Effective February 1, 2017, this District's Bankruptcy Judges revoked the prior standing order on no-look fees and adopted a new one.[10] Under this order, the total no-look fee is $3,600, but the last $600 of the fee is not payable until the last six months of the debtor's plan, provided the certain conditions are met.[11] It also provides that in cases where the debtor's monthly plan payment is less than $300, the no-look fee is limited to 10 times the monthly payment. The order also sets forth in more detail the services expected of the debtor's attorney in return for the fee. And, like the previous orders, it provides tiers of payments for various post-confirmation matters. Additionally, the order confirms the right of an attorney to forego receiving the no-look fee and

---

[7] *See* March 5, 2010 Standing Order Regarding "No-Look" Fees and Addendums in Chapter 13 Cases (available on the Court's website).

[8] *Id.*, at ¶(1), pg. 2 of 5.

[9] *See* September 13, 2013 Amended Standing Order Regarding "No-Look" Fees in Chapter 13 Cases (available on the Court's website).

[10] *See* January 24, 2017 Standing Order Regarding "No-Look" Fees in Chapter 13 Cases (Effective for cases filed on or after February 1, 2017) (available on the Court's website).

[11] During the hearing, there was some discussion as to whether the compensation allowed under the new no-look fee order is reasonable. The current fee is a reasonable approximation of the compensation that would be paid to a Chapter 13 debtor's attorney under a formal fee application process. Moreover, the fee is commensurate with that allowed in other Bankruptcy Courts within the Fifth Circuit, as published on their respective court websites: The base no look fee in the Southern District of Texas is $3,425 to $3,825; Northern District of Texas, $3,500; Eastern District of Texas, $3,500 - $4,000; Western District of Texas – Austin and San Antonio, $3,600-$4,900; Western District of Texas – Waco/Midland: $3,200 - $3,500; Northern and Southern Districts of Mississippi, $3,400; Eastern District of Louisiana, $2,500 plus $300 per year.

submit a traditional fee application as contemplated by, and in conformity with, applicable statutes and rules.[12] Although the new order specifically allows a debtor's attorney to be reimbursed the costs of noticing a modified plan when required, it is silent with regard to other expenses, and it no longer expressly states that the no-look fee is inclusive of the filing fee and other advances.

C.    **Attorneys' and Trustee's responses to the new no-look fee order**

Virtually all attorneys representing Chapter 13 debtors in this Court file no-money-down cases. The bar responded to the new order by immediately filing plans which seek reimbursement of the advances as administrative expenses of the estate. Without taking a position on the issue, the Chapter 13 Trustee filed "Comments" to numerous plans, including the plan in this case, requesting the Court to clarify whether the advances are reimbursable under the new standing order. In response, McBride filed a brief in support of confirmation.[13] Following the hearing on confirmation, the Court confirmed the plan with a reservation with respect to the reimbursement of expenses, taking this matter under advisement.

## II. DISCUSSION

McBride argues that he may seek reimbursement of the advances because they are permissible administrative expenses of the estate. First, he contends the advances were made to preserve the estate, thus allowing them to be reimbursed as administrative expenses under § 503(b)(1)(A). Second, he claims that the advances may be viewed as reimbursable expenses awarded under § 503(b)(2), which allows compensation and expenses awarded under § 330(a) as administrative expenses. For the following reasons, the Court finds that McBride may not seek reimbursement of the advances through the Debtor's plan.

A.    **The advances are not reimbursable under § 503(b)(1)(A)**

Section 503(b)(1)(A) allows a bankruptcy court to award administrative expenses for the "actual, necessary costs of preserving the estate." 11 U.S.C. § 503(b)(1)(A). If a debt is characterized as an administrative expense, the creditor on such debt enjoys an entitlement to distribution second only to domestic support obligations. *See* 11 U.S.C. § 507(a). Because of this

---

[12] *Id.,* ¶ 4.E.

[13] McBride essentially became the spokesperson for the entire bar in this regard, as they all adopted his position and arguments.

5

<br>
<br>

entitlement, § 503(b) expenses are generally narrowly construed to maximize the value of the estate for all creditors. *In re Frazier*, 569 B.R. 361, 367 (Bankr. S.D. Ga. 2017).

Courts have developed a two-part test for determining whether a debt is an administrative expense of the estate. First, the debt must arise from a transaction with the bankruptcy estate. Second, the goods or services evidenced by the debt must directly and substantially benefit the estate. *In re Jack Wade Drilling, Inc.* 258 F.3d 385, 387 (5th Cir. 2001); 4 *Collier on Bankruptcy* ¶ 503.06[3] (16th ed. 2015). The earliest a bankruptcy estate exists is on the petition date. 11 U.S.C. 541(a). Thus, in order to satisfy the first prong of the test, goods or services must be delivered or provided pursuant to a post-petition transaction with the estate; "it is not enough that payment becomes due after the petition date if the transaction was entered into with the debtor prepetition." 4 *Collier on Bankruptcy* ¶ 503.06[3][a] (16th ed. 2015). To satisfy the second prong of the test, "expenditures must also benefit the estate as a whole." *In re Nat'l Steel Corp.*, 316 B.R. 287, 300 (Bankr. N.D. Ill. 2004) *citing In re Jartran, Inc.*, 886 F.2d 859, 871 (7th Cir.1989). "If a creditor incurred expenses acting in its own interest, it is not entitled to an administrative expense." *Id., citing In re Cheatle,* 150 B.R. 266, 269 (Bankr.D.Colo.1993).

McBride contends the advances are reimbursable under § 503(b)(1)(A) because they were made to preserve the Debtor's estate. The Court disagrees. First, the filing fee, credit counseling fee and credit report fee are all prepetition expenses of the Debtor, not the estate. The filing fee is due from the "parties commencing a case under title 11." 28 U.S.C. § 1930(a). Thus, the Debtor, as the party commencing the case, is required to pay the filing fee at the time the petition for relief is filed. *See In re Frazier*, 569 B.R. 361, 367 (Bankr. S.D.Ga. 2017) (28 U.S.C. § 1930 requires the debtor, as the party commencing the bankruptcy case, to pay the applicable filing fee.). The credit counseling course must be completed by a debtor "during the 180-day period ending on the date of filing the petition by [the debtor]."[14] 11 U.S.C. § 109(h). Thus, this obviously is a prepetition obligation of the debtor individually. Finally, there is no requirement in the Bankruptcy Code or Rules that a debtor obtain a credit report. However, debtors are required to file with the

---

[14] Although there is no prohibition against a debtor completing the credit counseling course on the same day that the petition is filed, it must be completed before the petition is filed. *In re Francisco,* 390 B.R. 700 (10th Cir. BAP 2008); *In re Arkuszewski*, 550 B.R. 374, 378 (N.D. Ill. 2015)(completion of credit counseling course is a prerequisite to filing a petition for relief). Congress's placement of this requirement in the eligibility section indicated that it intended the moment of filing to be the deadline by which credit counseling must be accomplished. *In re Moore,* 359 B.R. 665, 671 (Bankr. E.D.Tenn. 2006) *quoting In re Hudson,* 352 B.R. 391, 395–96 (D.Md.2006).

petition a list of their creditors and schedules of their assets and liabilities. *See* 11 U.S.C § 521(a)(1) and Fed. R. Bankr. P. 1007. Since debtors often do not have complete financial records, most Chapter 13 practitioners "routinely order a credit report on every debtor client as a way of gathering creditor information to complete the schedules." Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 29.1, ¶ 1, Sec. Rev. April 24, 2009, www.Ch13online.com. Since the Code places the burden of providing the information for the preparation of the lists and schedules on the debtor, the debtor is responsible for purchasing a credit report if necessary to prepare his or her lists and schedules. Therefore, all three advances were made to fulfill obligations of the Debtor personally, not obligations of her estate. Moreover, the agreement requiring McBride to make the advances on behalf of the debtor was made prepetition. Simply put, McBride's reimbursement claim does not arise from a transaction with the Debtor's bankruptcy estate.

Second, the advances do not provide a direct and substantial benefit to the estate. Claims satisfying this prong of the test generally arise from outlays for repairs, upkeep, freight, insuring the value of the property and the hiring of custodians by the trustee. Also, claims for rent and for other goods and services incidental to protecting, conserving, maintaining and rehabilitating the estate are certainly contemplated within the phrase "actual, necessary costs and expenses of preserving the estate." 4 *Collier on Bankruptcy* 503.06[1] (16th ed. 2015). These type expenses benefit the estate as a whole, and all its creditors, by maintaining or adding to the value of the estate. *In re Frazier*, 569 B.R. at 367. The advancement of the filing fee, credit counseling fee and credit report fee by McBride does not provide such a benefit to the estate. Rather, it only serves to satisfy the personal obligation of the Debtor to pay each of these costs. Moreover, since debtors in virtually all cases before this Court are required to dedicate all of their disposable income to plan payments for the benefit of unsecured creditors for the duration of their plan, as required by § 1325(b)(1)(B), the diversion of a portion of this income to reimburse McBride for the prepetition advances may harm the unsecured creditors.

In *In re Frazier*, the debtor was granted permission to pay the filing fee in installments. After he defaulted in paying the installments, the debtor's attorney agreed to pay them to prevent dismissal of the case, with the understanding that she would seek reimbursement from the debtor's estate. The debtor's attorney argued that the filing fee was reimbursable under § 503(b)(1)(A) as

7

a necessary cost of preserving the estate. The court disagreed, stating: "The advancement of the debtor's filing fee does not provide such a benefit to the estate. Rather it only serves to satisfy the debtor's requirement to pay a filing fee under 28 U.S.C. § 1930." *In re Frazier*, 569 B.R. at 367. If a post-petition payment of the filing fee is not a §503(b)(1)(A) expense under the facts of *Frazier*, then an attorney is certainly not entitled to reimbursement under that section when the advance is made prepetition pursuant to a prepetition agreement with the client (debtor).

McBride requested that the Court take note of an unreported case, *In re Stanley*, because the court in that case allowed reimbursement of the filing fee under § 503(b)(1)(A).[15] In *Stanley*, the debtor's attorney paid the cost of the credit counseling course and the filing fee on behalf of the debtor, and sought reimbursement of both advances through the debtor's plan as administrative expenses. The court denied reimbursement of the cost of the credit counseling course, finding that both the advance, and the attorney's corresponding claim for repayment of the advance occurred prepetition. The court stated that this advance "presents a problem in that it created a prepetition creditor-debtor relationship between the attorney and the debtor," which "necessarily creates an overt conflict of interest between the attorney's fiduciary duty to the client … and the attorney's interest in maximizing his or her wealth by collecting the debt that gives rise to the claim."[16] The court concluded it was "improper for counsel to advance the prepetition credit counseling fee."[17] The court's holding with respect to the reimbursement claim for the cost of the credit counseling course is essentially the same as this court's — it is a prepetition expense of the debtor that was paid pursuant to a prepetition agreement between the debtor and the attorney.

However, *Stanley* reached a different conclusion with respect to the advance of the filing fee, finding it was made to pay "a post-petition expense" of the estate. The court stated:

> It is concluded that the filing fee is a post-petition expense. The commencement of a case under Section 301, 302, or 303 of title 11 creates an estate. 11 U.S.C. §541(a). If a debtor fails to pay the filing fee, the case may be dismissed after notice

---

[15] This case is not reported by Westlaw, Lexis, or any other case reporting service; it was attached as an exhibit to McBride's brief. *See* Doc. No. 16-4, Ex. D, *In re Stanley*, 11-bk-62125-LYN, Docket No. 23 (Bankr. W.D. VA. 2011).

[16] *Id.*, p. 3.

[17] *Id.*

8

and a hearing. Fed. R. Bankr. P. 1017. The Filing Fee is therefore an actual, necessary expense of preserving the estate because the case would be dismissed if that fee were not paid. It follows that counsel may advance, and may be allowed an administrative claim for the advancement of the filing fee.[18]

This Court disagrees with *Stanley's* conclusion that the filing fee is a post-petition expense. It had been paid in full by the attorney at the time the case was filed. Accordingly, no amount of the filing fee remained owing post-petition, and thus it was not a post-petition expense of the estate. As a result, there was no risk that the case would have been dismissed under Fed. R. Bankr. P. 1017 as claimed by the court. Moreover, even if it was paid post-petition, this Court agrees with *Frazier* — the fee was paid to satisfy an obligation of the debtor personally which benefitted only the debtor, not the estate. This Court respectfully declines to follow *Stanley*.

Because McBride's advances fail both parts of the two-prong test under § 503(b)(1)(A), he is not entitled to an administrative expense under that provision.

**B.    The advances are not reimbursable under §§ 330(a) and 503(b)(2)**

McBride contends that the advances are reimbursable under § 503(b)(2), which allows as an administrative expense "compensation and reimbursement awarded under § 330(a)." Section 330(a) provides the statutory authority for bankruptcy courts to award compensation and reimbursement of expenses to attorneys and other professionals providing services to the estate. Chapter 13 debtors' attorneys may be paid by the estate under § 330(a)(4)(B), which provides:

> In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

11 U.S.C. § 330(a)(4)(B). This provision was added to the Code by the Bankruptcy Reform Act of 1994. Prior to that time, compensation of a "debtor's attorney" was included in §330(a)(1), which allows professionals working for the estate to be "awarded … reasonable compensation for actual, necessary services" and "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). The Reform Act deleted "debtor's attorney" from the list of persons entitled to compensation and expense awards under § 330(a)(1). The Court, in *Lamie v. United States*

---

[18] *Id.*, p. 4.

*Trustee*, 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004), held that this deletion makes debtor's attorneys ineligible for compensation and expenses from the estate unless they are hired by the trustee.

After *Lamie,* Chapter 13 debtors' attorneys may only receive compensation under § 330(a)(4)(B), which on its face, only authorizes a court to award *compensation* to debtors' attorneys in a Chapter 13 case; it is silent with regard to expense reimbursements. And, no other subpart of § 330(a), nor any other section of the Bankruptcy Code, expressly authorizes a court to make an award of expenses to debtors' attorneys. The question becomes, then, whether a Chapter 13 debtor's attorney remains entitled to expense reimbursements after the 1994 Reform Act. *Lamie* briefly considered this issue, observing: "[W]hile § 330(a)(1) requires proper authorization for payment to attorneys from estate funds in Chapter 7 filings, it does not extend throughout all bankruptcy law. Compensation for debtors' attorneys in Chapter 12 and 13 bankruptcies, for example, is not much disturbed by § 330 as a whole. See, *e.g.,* 11 U.S.C. § 330(a)(4)(B)." *Lamie*, 540 U.S. at 537, 124 S. Ct. at 1031.

McBride cites numerous cases allowing Chapter 13 debtor's attorneys to not only seek compensation for their services, but also reimbursement of expenses under § 330(a)(4)(B). *See In re Frazier*, 569 B.R. 361 (expenses are reimbursable to Chapter 13 attorneys under § 330(a)(4)(B), but not filing fees); *In re Genatossio*, 538 B.R. 615, 617 (Bankr. D. Mass. 2015)(§ 330(a)(4)(B) allows chapter 13 debtor counsel to seek "fees and expenses for representing the interests of the debtor in connection with the bankruptcy case."); *In re Pastran*, 462 B.R. 201, 213 (Bankr. N.D. Tex. 2011)(debtor's attorney allowed fees *and* expenses for representing the debtor in litigation with her mortgage lender); *In re Marvin*, 2010 WL 2176084 (Bankr. N.D. Iowa)(court awarded fees *and* costs to debtor's attorney, not including filing fees); *In re Muldowney*, 2008 WL 513158 (Bankr. N.D. Iowa 2008)(Chapter 13 debtor's attorney allowed the cost of fax transmissions, postage and envelopes, and copying costs, although the reimbursement for copies was reduced from $0.50 to $0.15 per page; the court also approved the reimbursement of the filing fee, although the attorney had received a prepetition retainer to cover the filing fee (it was not paid from plan payments).); *In re Williams*, 384 B.R. 191, 194 (Bankr. N.D. Ohio 2007)(In general, § 330(a)(4)(B) authorizes counsel for debtor to be awarded fees *and* costs); *In re Wyche*, 425 B.R. 779 (Bankr. E.D. Va. 2010)(court allows reimbursement of portions of attorney's copy, postage,

10

pacer and other expenses, but disallows expenses deemed to be part of the attorney's overhead); and *In re King*, 350 B.R. 327 (Bankr. S.D. Tex. 2006)(allowing Chapter 13 counsel post-confirmation expenses for Pacer charges, parking, copies, faxes and postage).

But, at least one court has held that the "definition of the word 'compensation' and the absence of 'reimbursement' in Section 330(a)(4)(B) eliminates any basis for reimbursing attorney expenses under the section." *Marotta*, 479 B.R. 681, 689–90 (Bankr. M.D.N.C. 2012). *Marotta* concluded:

> The Oxford English Dictionary defines "compensation" as "salary or wages; payment for services rendered." *Oxford English Dictionary* (2d ed. 1989) "Reimbursement" is defined as "repayment." *Id.* Although "compensation" may encompass reimbursement for expenses in other contexts, the plain meaning of the statute suggests that Congress did not intend reimbursement of attorney expenses under Section 330(a)(4)(B) ("reasonable compensation") as it did under Section 330(a)(1) ("reasonable compensation ... and reimbursement for actual, necessary expenses"). The use of the word "reimbursement" in a neighboring paragraph suggests that Congress indeed meant the plain, dictionary definition of "compensation" in Section 330(a)(4)(B). The "commonsense canon of noscitur a sociis" counsels that a word is given "more precise content by the neighboring words with which it is associated." *United States v. Williams*, 553 U.S. 285, 294, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008) (citing 2A Sutherland Statutes and Statutory Construction § 47.16 (7th ed. 2007)). Applying this canon, the Court determines that the narrow, plain meaning of the word "compensation" to mean payment for services, rather than reimbursement for expenses.

*Id.* *Marotta* appears to be the only reported decision to have held that debtor's attorneys are not entitled to expense reimbursements under any circumstances. The court alluded to the above listed cases that allowed Chapter 13 debtor's attorneys to seek reimbursement of expenses, but did not view them controlling because "in each of [those] cases, … the court assumed, without discussion, that expenses may be reimbursed under Section 330(a)(4)(B)." *Id.* at 690.

The Court respectfully disagrees with *Marotta*. Interpreting § 330(a)(4)(B) to prohibit Chapter 13 debtor's attorneys from ever obtaining reimbursement of expenses is not a reasonable interpretation of the statute. As one court put it:

> It is easy to imagine contested matters that may arise in a Chapter 13 case that would require a debtor's attorney to incur expenses, such as deposition costs or witness fees. To suggest that such direct expenses of representing the debtor are not reimbursable seems contrary to the concepts of reasonableness and necessity

11

encompassed in § 330(a)(4)(B). Moreover, that subsection refers back to the "other factors set forth in this section," which are the factors relating to other professionals compensated under § 330(a)(1).

*Frazier*, 569 B.R. at 369. This Court agrees with *Frazier*, and concludes that Chapter 13 debtors' attorneys remain eligible to seek expense reimbursements from the Debtor's estate. Indeed, this District's current Standing Order Regarding "No-Look" Fees in Chapter 13 Cases recognizes that a Chapter 13 debtor's attorney may receive reimbursement of expenses, as the order allows recovery of "actual out-of-pocket postage costs for service of the motion to modify the plan in addition to the no-look fee allowable for filing the modification"[19]

The effect of the no-look fee order on expense reimbursements must be considered. The no-look fee generally serves as an alternative to requiring Chapter 13 debtors' attorneys to submit formal fee applications under Rule 2016(a), which entails the filing of "an application setting forth a detailed statement of (1) the services rendered, time expended *and expenses incurred*, and (2) the amounts requested." Fed. R. Bankr. P. 2016(a)(emphasis added). If this formal process was in place here, the Court would be required to review the application using the lodestar method. *See In re Cahill*, 428 F.3d 536, 539–40 (5th Cir. 2005) ("The Fifth Circuit has traditionally used the lodestar method to calculate 'reasonable attorneys' fees under § 330. A court computes the lodestar by multiplying the number of hours an attorney would reasonably spend for the same type of work by the prevailing hourly rate in the community."). Detailed findings of fact by the court to support the compensation award if less than that requested would also be required. *Id.; see also Demery v. Johns*, 570 B.R. 44, 49 (W.D. La. 2017).

The no-look fee is designed to replace this process. An attorney's acceptance of a court-authorized no-look fee in a Chapter 13 case is an offer to provide their professional services for an agreed amount in exchange for receiving payment without the necessity of filing a fee application. *In re Smith*, 331 B.R. 622, 629 (Bankr. M.D. Penn. 2005). Put another way, the no-look fee "represents a kind of agreement not only with the debtor but with the court: in exchange for the attorney's commitment to perform specified legal services for the debtor, the court awards a [no-look] fee and dispenses with the usual application." *In re Brent*, 458 B.R. 444, 450 (Bankr. N.D.Ill. 2011). In contrast to formal fee applications, a no-look fee procedure simplifies "the compensation

---

[19] January 24, 2017 Standing Order Regarding "No-Look" Fees in Chapter 13 Cases (Effective for cases filed on or after February 1, 2017) (available on the Court's website), ¶ 4.B.

12

process in a large number of fairly routine cases," and is "immensely advantageous to both the courts and the bar." *Id.* No-look fees benefit the bar by saving "attorney time otherwise devoted to maintaining extensive records and preparing elaborate fee applications, and they encourage the efficient practice of law." *Id., citing In re Eliapo*, 468 F.3d 592, 599 (9th Cir. 2006). No-look fees benefit "bankruptcy courts in disposing of run-of-the-mill Chapter 13 fee applications expeditiously and uniformly, obviating the need for bankruptcy courts to make the same findings of fact regarding reasonable attorney time expenditures and rates in typical cases for each fee application that they review." *In re Cahill*, 428 F.3d at 541; *In re Eliapo*, 468 F.3d at 599 ("[U]se of presumptive fees saves time that a busy bankruptcy court would otherwise be required to spend dealing with detailed fee applications."); *In re Brent*, 458 B.R. at 450. As one court has noted, "[T]he sheer volume of chapter 13 cases and the rarity of creditor or debtor objections to attorney's fees in such cases make court review of each fee application or fee arrangement administratively burdensome." *In re Eliapo*, 468 F.3d at 599 (citations omitted).

Accordingly, the no-look fee "obviates the need, in most cases, to address whether the expenses of a Chapter 13 debtor's attorney are reimbursable under § 330(a)(4)(B)." *In re Frazier*, 569 B.R. at 369. The no-look fee is intended as a replacement for the Rule 2016 application process, which is where both compensation and expense requests would be set forth, by providing a total amount that a debtor's attorney can be paid without instituting the formal application process.

This intent is evident from the terms of this District's Standing Order, which, as noted above, is the attorney's contract with the Court. It provides that no-look fees "are compensable by the Chapter 13 Trustee without fee application upon confirmation or upon dismissal pre-confirmation," and that "any fee application other than 'no-look' fee requests must be made by formal fee application;" it also reiterates the right of "any party in interest or the Court" to object to a "presumptive fee request."[20] Under these provisions, if there is no objection, the debtor's attorney will be paid the no-look fee without further review.[21] Finally, it sets forth the one instance that debtors' attorneys can be reimbursed expenses over and above the no-look fee (i.e., "actual

---

[20] January 24, 2017 Standing Order Regarding "No-Look" Fees in Chapter 13 Cases (Effective for cases filed on or after February 1, 2017) (available on the Court's website), ¶ 3.B, ¶ 4.E, ¶ 5.

[21] *Id.*, ¶ 6.

13

out-of-pocket postage costs for service of the motion to modify the plan").[22] Thus, while this Court acknowledges that a Chapter 13 debtor's attorney may incur certain reimbursable expenses, the Court finds that those expenses are included in the Court's contemplation and implementation of the no-look fee.

McBride argues that the advances are compensable based on how these matters were handled in the past by this Court. McBride submitted a plan and corresponding confirmation order from a 2010 case, Case No. 10-80213 (*In re Francois*), which he handled.[23] The purpose of this submission was to inform the Court that at one time it routinely allowed reimbursement of filing fees and the other advances. According to McBride, the only reason the reimbursements were halted was because of the express provision in the original order on no-look fees which made the no-look fee inclusive of any advances. Since the new order omits this provision, he argues that it necessarily means that the advances are again reimbursable. The Court disagrees. As discussed above, the no-look fee is intended to be inclusive of all expenses. If the debtor's attorney seeks any amount over the no-look fee, the current standing order requires a formal fee application setting forth both compensation and expenses requested.

Furthermore, even if McBride's request for reimbursement of prepetition advances were construed as an application, this Court finds that the advances are not properly reimbursable under 11 U.S.C. § 330(a)(4)(B). The court in *In re Frazier* also considered whether a debtor's attorney's reimbursement claim for the advance of a filing fee would be allowed if the attorney instituted a formal fee application process instead of electing the no-look fee. The court concluded it would not. As the court so aptly put it:

> [T]he Court finds that the advance of a Chapter 13 debtor's filing fee is not properly reimbursable under 11 U.S.C. § 330(a). Pursuant to 28 U.S.C. § 1930, a debtor's filing fee is, in essence, his or her cost of admission. To allow a debtor's attorney to satisfy this obligation of the debtor and seek repayment as an administrative expense funded by the Trustee has the potential to push this cost onto creditors. Nothing in the Bankruptcy Code contemplates such treatment of the filing fee.

---

[22] *Id.*, ¶ 4.B.

[23] Case No. 17-80108, Doc. No. 16, Exs. N-1 and N-2.

14

*In re Frazier*, 569 B.R. at 369-70. This Court agrees, and for the same reasons, finds that the advances for the credit counseling fee and the credit report fee are not reimbursable from the debtor's plan payments.

**C.     Other remedies afforded the debtor under the Code and Rules**

The Debtor claims the advance of the filing fee by her attorney was necessary because she could not pay it at the time she filed her petition. This may be true, but the advance by her attorney was not necessary, because Congress has already provided a remedy to debtors who are unable to pay the Chapter 13 filing fee at petition filing — payment in installments. *See* 28 U.S.C. § 1930(a)("An individual commencing a voluntary case or a joint case under title 11 may pay [the filing] fee in installments."). Rule 1006(b) of the Federal Rules of Bankruptcy Procedure provides the procedure for paying the filing fee in installments. Generally, the debtor's petition must be accompanied by an application using the "appropriate Official Form," in which the debtor is required to declare that he or she is "unable to pay the filing fee except in installments." Fed. R. Bankr. P. 1006(b)(1). As written, the Rule requires the clerk of court to "accept the petition if accompanied by an installment payment application, but also preserves … the discretion of the court to deny the application and direct the debtor to pay the entire fee to the clerk." 1 *Collier on Bankruptcy* ¶ 9.02 (16th ed. 2015).

The ability to pay the filing fee in installments represents a significant benefit to debtors. It allows them to get the full benefit of filing a petition for relief, including the imposition of the automatic stay to stave off their creditors, even though all or part of the filing fee is not paid at case filing. The Debtor can take up to 120 days from petition filing to pay the fee (with court permission). And, for cause shown, the debtor can obtain an extension of up to 180 days from petition filing to pay the filing fee. *See* Fed. R. Bankr. P. 1006(b)(2).

A decision to allow a debtor to pay the fee in installments is not without consequences for other parties, however, especially unsecured creditors. This is because it may result in a prepetition expense of the debtor being effectively converted to a post-petition expense of the estate, to be borne primarily by unsecured creditors.[24] This is particularly the case in courts such as this one,

---

[24] The bankruptcy clerk of court's claim for payment of the filing fee is given priority status under § 507 of the Code.

15

in which the Chapter 13 Trustee will object to a debtor's plan that does not commit all of the debtor's disposable income to the plan, as required under § 1325(b)(1)(B). Since a portion of the debtor's earnings or other assets, which are property of the estate under § 1306 of the Code, will be diverted to pay the filing fee, it necessarily means that any dividend to the unsecured creditors will be reduced by that portion of the estate's property (be it income or other estate property) used to pay the filing fee.

Rule 1006(b) leaves to the bankruptcy court's discretion the decision to allow the filing fee to be paid in installments and possibly pushed to unsecured creditors. It is only when a debtor follows the proper procedure set forth in the Rule and declares to the court that the filing fee cannot be paid "except in installments" that estate property — the debtor's income — may be used to pay the filing fee. If the Court were to allow debtor's attorneys to simply pay the filing fee on behalf of all their Chapter 13 clients, whether for the client's convenience or necessity, and then be reimbursed from their clients' bankruptcy estate, it would effectively eviscerate this Rule.

"[W]hen the Bankruptcy Code and the applicable rules of procedure already provide an answer to a particular problem, the court should not disregard that solution and use its equitable powers to create alternative remedies." *See In re Taylor*, 289 B.R. 379, 389 (Bankr. N.D. Ind. 2003), *citing*, *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206–07, 108 S.Ct. 963, 968–69, 99 L.Ed.2d 169 (1988) (the court's equitable powers can only be exercised within the confines of the Bankruptcy Code). Accordingly, the Court will not allow filing fees to be passed onto a debtor's estate unless the application to pay in installments is filed and approved by the Court.[25] Put another way, the discretion to determine whether a filing fee should be charged to a debtor's estate is not given to the debtor's attorney; that discretion is reserved only to the bankruptcy court, and only in situations where the debtor can show that the filing fee cannot be paid "except in installments."[26]

---

[25] The importance of judicial review of any matter which may have the effect of shifting costs to the estate and its creditors permeates the entire Code and Rules. Thus, the Court's discretion under Fed. R. Bankr. P. 1006 with respect to allowing a debtor to pay the filing fee in installments is consistent with the exercise of the authority granted to bankruptcy courts under §§ 327, 329, 330, 331 and 503, authorizing examination and review the reasonableness of all professional fees and other costs which are to be paid by the estate.

[26] After all, it is ultimately "the court's responsibility to protect the estate … in Chapter 13 cases where there is little motivation for a debtor, or creditors to object to a particular fee allowance." *In re Smith*, 331 B.R. 622, 628 (Bankr. M.D.Pa. 2005), *quoting In re Symczak*, 246 R.B. 774, 778 (Bankr. D.N.J. 2000).

Finally, it should go without saying that debtors' attorneys have another option with regard to paying the costs of filing a case under Chapter 13: they can ask their clients for a retainer. The attorney collecting a retainer would be required to disclose the receipt of the funds, as required by § 329 and Rule 2016(b). *See* 11 U.S.C. § 329(a); *see also*, *In re Hebert*, 2015 WL 5813438, *3 (Bankr. W.D. La. 2015). They would also be required to place the retainer in their client trust account as required by Rule 1.5(f)(4) of the Louisiana Rules of Professional Conduct because those funds are property of the client until spent. However, Rule 1.5(f)(4) also allows the lawyer to "expend these funds as costs and expenses accrue, without further authorization from the client for each expenditure, but [requires] a periodic accounting for those funds as is reasonable under the circumstances." As discussed above, the filing fee and all other expenses at issue in this case accrue prepetition. Thus, these funds could be transferred from the attorney's trust account prepetition to pay the expenses. The funds would not be property of the estate, and provided there is disclosure by the attorney under § 329 of the Code (and the disclosure may function as the "periodic accounting" required by Louisiana law), further approval from the Court would not be necessary. *See* 3 *Collier on Bankruptcy* ¶ 329.04[1] (16th ed. 2015). Moreover, under these circumstances, the debtor's attorney would remain entitled to the full no-look fee, because no part of the filing fee is being shifted to the estate.

### III. CONCLUSION

Debtors are responsible for paying the filing fee to commence a bankruptcy case. Debtors are also responsible for paying for and completing credit counseling and for paying for a credit report, if necessary, to complete lists and schedules they are required to file with their petition for relief. Thus, the filing fee and the costs for the credit counseling course and credit report are obligations of debtors personally, not their bankruptcy estates. If a debtor is unable to pay the filing fee at the time his or her petition for relief is filed, Congress provided a remedy by allowing those debtors to pay the filing fee in installments. It is only in those cases in which the "installment procedure" is followed that filing fees may be shifted to the debtor's bankruptcy estate.

In this case, McBride paid the filing fee and other prepetition costs for the Debtor. The Court finds that these advances are not reimbursable to McBride as an administrative expense of the Debtor's estate under 11 U.S.C. § 503(b)(1)(A) or (b)(2). While the Court recognizes that certain expenses of a Chapter 13 debtor's attorney may give rise to an administrative expense

17

claim, the filing fee, credit counseling fee and credit report fee are not such expenses. Accordingly, the Court will enter a separate order disallowing the request for reimbursement of the advances over and above the no-look fee allowed under the Court's current standing order. In other words, McBride, and all other debtors' attorneys who elect to be compensated under the Court's no-look fee order, are limited to requesting the no-look fee provided under the terms of the order and no more.

# # #